# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| JEFFREY A FRAIN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No. 1:18-CV-155-HAB ) |
| ANDREW SAUL, Commissioner of the Social Security Administration[1], | ) ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter comes before the Court on Plaintiff Jeffrey A. Frain's Opening Brief (ECF No. 19) ("Plaintiff's Brief"), filed on December 5, 2018. Defendant Andrew Saul, Commissioner of the Social Security Administration (the "Commissioner"), filed his Memorandum in Support of Commissioner's Decision (ECF No. 20) on December 20, 2018. Plaintiff did not file a reply brief. This matter is now ripe for review.

**A.     Procedural History**

Plaintiff applied for both Disability Insurance Benefits and Supplemental Security Income benefits under Title II of the Social Security Act on January 15, 2015. His application was denied initially on May 20, 2015, and upon reconsideration on June 25, 2015. On February 8, 2017, Plaintiff attended a hearing on his application before the Administrative Law Judge ("ALJ"). The ALJ entered her Decision on June 26, 2017, finding that Plaintiff was not disabled.

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 USC § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

On June 30, 2017, Plaintiff challenged the Decision by timely filing a Request for Review of Hearing Decision/Order with the Appeals Council. That request was denied on March 31, 2018. Thereafter, Plaintiff timely filed his Complaint to Review Decision of Commissioner of Social Security Administration (ECF No. 1) with this Court on May 29, 2018.

**B.      Legal Analysis**

**1.      *Standard of Review***

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted).

In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not discuss every piece of evidence in the

record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of [his] reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

**2.** *The ALJ's Decision*

A person suffering from a disability that renders her unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

If a claimant's application is denied initially and on reconsideration, he may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1). An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively

disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a); *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 12, 2013. At step two, the ALJ found that Plaintiff had the following severe impairments: cubital tunnel syndrome, depressive disorder, mood disorder with depressive features, chronic pain syndrome, degenerative disc disease, degenerative joint disease, and fibromyalgia. The ALJ further found that the Plaintiff had the following non-severe impairments: hyperlipidemia, gastroesophageal reflux disease ("GERD"), and insomnia.

At step three, the ALJ found that Plaintiff did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 89). At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> Perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except sit/stand option after 15 to 30 minutes; never climbing ladders, ropes, scaffolds, ramps, and stairs; occasionally balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to unprotected heights; frequent fingering and handling; can have brief, routine, and superficial interaction with supervisors; can have occasional interaction with coworkers and the public; can understand, remember, and carry out simple, routine and repetitive tasks with only occasional, simple decision making required; cannot work at assembly line production rate pace; and would need to use a can occasionally when ambulating.

(R. 91). At step five, the ALJ determine that Plaintiff was unable to perform any past relevant work, but that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform.

**3.    *The RFC***

Plaintiff first asserts, based upon *Arnett v. Astrue*, 676 F.3d 586 (7th Cir. 2012), that the ALJ's sit/stand limitation in the RFC lacked necessary specificity. In *Arnett*, the Seventh Circuit held that an RFC "must be specific about the required frequency of standing and sitting," noting that it must either "specify a particular frequency" or must state that the individual may "choose to sit or stand when [he] feels it is necessary." *Id*. at 593. Plaintiff asserts that the RFC violates *Arnett* because it is vague, in that it contains both a frequency and an individual option. The Court does not agree.

In his hypothetical to the Vocational Expert ("VE"), the ALJ described an individual "who was able to perform sedentary work with a sit/stand option, being able to stand after sitting for 30 minutes." (R. 317). As this Court stated in *Best v. Acting Comm'r. of Soc. Sec.*, 2017 WL 6523929 (N.D. Ind. December 21, 2017)[2], "not only did the ALJ specifically indicate that the sit/stand option was to be at-will, a particular frequency was attached to further clarify what was intended by at-will. The Court does not find that any further detail was necessary for the vocational expert to determine how the occupational base would be eroded." *Id*. at *3. The RFC substantively incorporated the hypothetical, communicating both a sit/stand "option," and a particular frequency to clarify the option ("15 to 30 minutes"). The Court does not find any basis to remand based upon the postural limitation.

Plaintiff next asserts that the RFC's inclusion of "frequent fingering and handling" fails to consider all of Plaintiff's severe and non-severe impairments, specifically his diagnoses of a lesion

---

[2] The Court notes that Plaintiff's counsel, Randall S. Forbes, was also counsel for the plaintiff in *Best*. Attorney Forbes is reminded that, under Indiana Rule of Professional Conduct 3.3, he has a duty to "disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client." Given the obvious similarities in both the argument advanced by counsel and the RFCs in the two cases, *Best* should have been disclosed to the Court.

of the ulnar nerve, right rotator cuff tendinitis, cubital tunnel syndrome, carpal tunnel syndrome, and bilateral wrist degeneration/pain. (ECF No. 19 at 15–16). Plaintiff states that "[i]t defies logic that someone with Plaintiff's serious hand/wrist/elbow/shoulder and other upper extremity impairments…could continue using their hand/wrist/upper extremities frequently." (*Id*. at 15).

The Court has reviewed those portions of the record that Plaintiff has designated in support of his claimed limitations, as well as the rest of Plaintiff's medical records. In nearly every record, the limitations claimed by the Plaintiff are noted as present or historical diagnoses with no indication of what, if any, physical impairments result. The only exception is in the Record at page 1206, where a doctor at the Fort Wayne Veteran's Administration Medical Center recorded Plaintiff's subjective claims that he had "trouble holding onto the cups, sodas and usage." (R. 1206). For the most part, then, these records do nothing to support a claim for additional limitations as a mere diagnosis does not demonstrate disability. *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998).

In any event, the Court finds that the ALJ built an accurate and logical bridge from the evidence to the conclusion. The ALJ repeatedly references the evidence in the record related to Plaintiff's upper extremities, including:

- Numbness in the left little and ring fingers;
- Mild degenerative changes in the left wrist;
- Mild paresthesia and/or dysesthesia in the right upper extremity;
- Mild right upper extremity intermittent pain;
- Minimal degenerative changes in the right wrist;
- Nonspecific cystic changes in the right wrist;
- Injections and occupational therapy for right wrist pain;

- Subjective claims of sharp pain in both wrists; and

- Subjective reports of problems with buttoning and zipping.

(R. 88, 92). The ALJ nonetheless found that medical evidence did not support any further limitations, noting that Plaintiff was able to raise his right shoulders, make fists, move his wrists, and demonstrate fair hand grasp. (R. 93).

The Court may or may not have weighed the medical evidence in the same way as the ALJ, but the ALJ's determination is entitled to deference. *Lopez*, 336 F.3d at 539. The Court is satisfied that the ALJ has sufficiently addressed the evidence in the record, both supporting and contradicting her conclusion, to enable the Court to trace her reasoning. As such, the Court will not remand this matter on the basis of the claimed deficiencies in the RFC.

**4.** *ALJ's Credibility Determination*

Finally, Plaintiff challenges the ALJ's credibility determination, claiming that the ALJ failed to consider his work history and military service in evaluating the credibility of Plaintiff's subjective complaints. In support of his claim, Plaintiff cites *Stark v. Colvin*, 813 F.3d 684 (7th Cir. 2016) and *Hill v. Colvin*, 807 F.3d 862 (7th Cir. 2015), both of which state that a "claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Stark*, 813 F.3d at 689; *Hill*, 807 F.3d at 868.

A failure to discuss a claimant's work history is not, however, fatal to an ALJ's determination. As *Stark* notes, "[a]n ALJ is not statutorily required to consider a claimant's work history." *Stark*, 813 F.3d at 689. A claimant's work history is just one factor among many and is not dispositive to the credibility determination. *Summers v. Berryhill*, 864 F.3d 523, 529 (7th Cir. 2017). This Court cannot, and will not, remand simply because the ALJ did not reference every factor relevant to the credibility inquiry. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).

Because Plaintiff raises no other challenge to the credibility determination, he raises no grounds upon which remand can be granted.

The Court would also note that the ALJ did discuss Plaintiff's extensive work history in the step five evaluation of Plaintiff's ability to perform past relevant work. (R. 95). The fact that this discussion is had at step 5, rather than in the RFC determination, is irrelevant. The Court cannot discount an ALJ's discussion of evidence simply because it appears in a different portion of the Decision. *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015). The ALJ was plainly aware of the Plaintiff's work history and the Plaintiff has done nothing to demonstrate otherwise.

**C.      Conclusion**

For the foregoing reasons, the Decision is AFFIRMED.

SO ORDERED on October 3, 2019.

                                              s/ Holly A. Brady
                                              JUDGE HOLLY A. BRADY
                                              UNITED STATES DISTRICT COURT